HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LINDA EVANS

              Plaintiffs,

     v.

DENNIS BRADDOCK et al.,

              Defendants.

Case No. C06-5304  RBL

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      This matter is before the court on Defendants' Motion for Summary Judgment [Dkt. # 12]. Plaintiff claims that she was constitutionally entitled to a "name clearing hearing" prior to the publication of a state auditor's report critical of her conduct, and prior to an alteration of her employment status. The Defendants argue that Plaintiff was not entitled to such a hearing because her employment was not terminated, and that she was provided a hearing in any event. Because there are no material issues of fact and the Defendant has demonstrated its right to judgment as a matter of law, the Motion is GRANTED and the Plaintiffs' claims are dismissed.

    **1.**    **Factual Summary**.

      Plaintiff is a former long term employee of defendant DSHS. In 1996 she became the Regional Administrator for the Community Services Division, Region 5, an at-will position exempt from the Merit System Rules which provide some employees additional due process and other protections. As an exempt employee, Plaintiff could be terminated at the discretion of her employer.

In June 2003, the DSHS received a whistle-blower complaint that Evans was improperly using state property for her personal benefit, and for the benefit of her "non-profit," apparently a ministry. The Washington State Auditor's office commenced an investigtion of the allegation, and on February 9, 2004, defendant Bingaman (now Marley) (DSHS Assistant Secretary) assigned Evans to work at home pending completion of the Auditor's investigation.

On May 10, 2004, the Auditor issued his preliminary report, and sent it to Evans and DSHS, pursuant to Chapter 42.40 RCW. By this time, Evans had counsel, and he responded at length to the draft report on May 18. His response sought specific details on each of the allegations and the evidence supporting them, and argued that because the draft report found only that violations "may have occurred," the allegations be eliminated from the report and demanded that "refrainment from further action should occur." [*See* Plaintiff's Response, Dkt. #15, at 12].

According to the Plaintiff, the Auditor did not provide the requested information, but instead on June 23, 2004, issued a revised draft report. The report found that the alleged conduct had "occurred," rather than "may have occurred." On July 8, 2004, Evans again responded through counsel, this time asserting that the "stack of documents" provided as evidence was not "keyed to the assertions in any meaningful way." She sought articulation of the bases for the claim that the described conduct was a violation of state law. She also sought an explanation for the report's change from the conduct "may have occurred" to "[did] occur."

On July 12, 2004, the Auditor issued his final report, finding that Evans had in fact misused her office. [Evans Dec., Dkt. #16, Ex. 15.] Evans argues that she had no ability to respond comprehensively to the allegations of misconduct, and that the information she needed to do so was not forthcoming. Thus, she claims, she had no meaningful opportunity to "clear her name" prior to the publication of the report. She claims that the report was "stigmatizing" and cast her in a bad light. According to the Plaintiff's declaration, this report was placed in the DSHS "reading room" and that her fellow employees "read all about it."

On August 9, Evans and her attorney met with Ms. Bingaman, at which Bingaman offered to "listen and take notes." Evans asserted that under RCW 42.20.040(10)(b) she was entitled to participate in the formulation of a "plan for resolution." Her attorney memorialized his position on this in a letter the same day, expressing his surprise that the meeting was not for that purpose, that Bingaman was apparently unaware of this requirement, and stating his and his client's availability to formulate such a plan. [Evans Dec. at Ex. 17].

In late September, 2004, Evans and her attorney were told that Evans would be permitted to have a "name clearing hearing." [This document is not included in the record.]

On September 28, Evans' counsel responded that he "did not know what [a name clearing hearing] meant," and that as a result he and his client did not know how to prepare for it. [See Response at 16; Evans Dec. at Ex. 18].

On behalf of the DSHS, Assistant Attorney General Sheehan wrote back the same day, citing *Cox v. Roskelley*, 359 F.3d 1105 (9th Cir. 2004), and explaining that although DSHS did not believe Evans was entitled to such a hearing, they would give her one prior to any decision on the ramifications of the report. She also invited Evans to "present all evidence or information she believed relevant" to the matters set out in the report. She informed counsel that only the allegations in the report were at issue, and again invited Evans to "present anything she thinks may be persuasive" regarding the allegations. [Evans Dec. at Ex. 19.]

On October 8, Evans' counsel responded that he was still researching the name clearing hearing, and sought the production of any official policy pursuant to which the state intended to conduct the hearing. He also agreed that the contemplated hearing was analogous to a *Loudermill* hearing, and outlined his understanding of what Ms. Evans was entitled to in such a hearing. [Evans Dec. at Ex. 20].

On October 28, 2004, Assistant AG Sheehan again wrote Evans and her counsel, scheduling the hearing for November 4. The letter outlined the specific conduct of which Ms. Evans was accused, cited and enclosed the relevant DSHS Administrative Policies, and again invited her to respond to the allegations, present any information she chose, and to "explain why you should not be subject to employment action if the allegations are true." [*See* Marley Dec. at Ex. 2]

According to the Plaintiff, this hearing was held and she and counsel "presented evidence and argument to the effect that the allegations either were not true or did not constitute misconduct." [Response at 18].

In February 2005, DSHS notified Evans that she was being removed from her exempt position as the Region 5 administrator. The decision was apparently not directly related to the Auditor's investigation, but Evans was offered, and accepted, a position in the DSHS Economic Services Administration. She began working in that position on March 1, 2005, and in mid-June took a leave of absence to care for an ailing relative. She did not return to work and resigned September 17, 2005.

Plaintiff sued under 42 U.S.C. §1983 on June 1, 2006, asserting Due Process claims. She claims that

the DSHS deprived her of property and liberty interests without due process when it "published" the Auditor's final report regarding the whistle-blower allegations against her in July 2004. She claims that the transfer to another position is an alteration of her employment sufficiently like a termination to require a name clearing hearing. She also argues that even if it is not, she was constructively discharged[1] from her substitute position, which is akin to a termination.

Defendants seek dismissal of Plaintiff's claims, arguing that Evans was not terminated from state employment, and that the publication of the Auditor's Report separate from a termination is not actionable under state or federal law.

**2.    Summary Judgment Standard**.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**3.    Analysis**.

Plaintiff's sole[2] claim is that the Fourth Amendment's Procedural Due Process guarantee required her to have a "name clearing hearing" prior to the Auditor's Report's publication in July 2004. The Defendants argue that such a hearing is only required when the stigmatizing information is "publicized" in connection with

---

[1] Though it is not ultimately dispositive, the court notes that the Plaintiff has supplied literally no evidence or argument to support her "back up" claim that she was constructively discharged sometime after she accepted the transfer to another position.

[2] In support of her Due Process claims, Plaintiff argues that she was effectively terminated in February 2005, or was constructively discharged in June of that year, and that her termination was tied to the auditor's report. She does not assert a wrongful discharge claim.

ORDER
Page - 4

an employee's termination, and that publication without termination is not actionable.

The facts are not seriously at issue (though Evans remains steadfast that the conduct outlined in the report either did not occur or was not misconduct). The parties also agree on the relevant body of case law governing Plaintiff's claims and the Defendants' Motion.

In *Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004), the Ninth Circuit reiterated what the Supreme Court had held in 1972:

> [A] terminated employee has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the termination is publicly disclosed. Failure to provide a "name-clearing" hearing in such a circumstance is a violation of the Fourteenth Amendment's due process clause.

*(Citing Board of Regents v. Roth*, 408 U.S. 564, 573 (1972)). Courts addressing the issue have uniformly held that publication of a stigmatizing charge without discharge is not constitutionally prohibited. *See Mustafa v. Clark County School District*, 157 F.3d 1169, 1179 (1998) ("In the end, Mustafa was not terminated, but rather was transferred. . . . Moreover, harm to reputation alone is insufficient to implicate and individual's liberty interest"); *citing In Re Selcraig*, 705 F.2d 789, 795 (5th Cir. 1983) ("official publication of a stigmatizing charge ... without discharge is not of itself constitutionally prohibited"), and *Paul v. Davis*, 424 U.S. 693, 711 (1976).

Plaintiff's primary attack on this authority is based on *Vanelli v. Reynolds School District*, 667 F.2d 773 (9th Cir. 1982). She claims that that authority supports her contention that a name clearing hearing is required prior to publication of stigmatizing information in connection with termination "*or alteration of some right or status recognized by state law.*" *[Vanelli* at 778, Plaintiff's response at 20 (emphasis added).]

This reasoning is flawed for two reasons. First, the plaintiff in *Vanelli*, as was true in every other case cited by either side in which the Plaintiff's claim survives, was in fact "dismissed." *Vanelli* does not further address what sort of "right or status" might suffice. The case most analogous to this one is *Mustafa*, where a teacher was re-assigned (transferred) for disciplinary reasons, rather than terminated.

ORDER
Page - 5

The court there clearly held that such a transfer did not implicate the plaintiff's right to a "name clearing hearing."

Secondly, the Plaintiff has not articulated the "right or status recognized by state law" which was altered by the Report's publication in July 2004. She did not have a state law right to her position as the Regional Administrator; her position was admittedly "exempt," and she was an at will employee. As was the case with Mr. Mustafa, she did not have a constitutionally protected interest in her specific position. *See* 157 F.3d at 1178 ("Nevada law does not provide individual teachers with a right to avoid transfers for disciplinary reasons[,] . . . [ W]hile a teacher transferred for disciplinary reasons may have a cause of action under a collective bargaining agreement, this would not rise to a constitutionally-protected interest inasmuch as it was not an interest created by state law.").

The other issue raised by the Plaintiff's claims relates to the timing of the public disclosure. She appears to argue that the July 14 Auditor's Report was "published" when it was made available for viewing by other employees in the DSHS "reading room," whatever that may be, in July 2004. It is clear that, at that time, the publication was not "in connection with" her termination. For this reason, even if it was determined that Evans was ultimately terminated, this case is fundamentally different than the others cited by the parties.

In *Cox*, for example, the "publication" of stigmatizing information occurred when the basis for the employee's termination (the finding that plaintiff had directed county road repair work to a company with whom he had a relationship) was recited in his termination letter, which was then placed in his personnel file. *Cox*, 359 F.3d at 1110. There, as in other cases on the subject, the public employee's termination and the publication of stigmatizing information was simultaneous. Because Cox was not given an opportunity to clear his name prior to the publication of the information in his termination letter, his due process rights were violated. *Id.* at 1112.

In this case, the Auditor's report was allegedly[3] "published" in July, some 7 months prior to Evans' removal from her position as the Region 5 Administrator. The parties have not cited, and the court has not found, a case specifically addressing a situation where stigmatizing information was published by a third party months before the employer made any adverse employment decision, and where, as here, the employee was provided ample and repeated opportunities – of which she repeatedly availed herself – to address the allegations prior to any such employment decision.

As the Plaintiff argues, the well-settled rule is that a public employee is entitled to "some form" of notice and opportunity to be heard before being deprived of a liberty or property interest. The parameters of that notice and opportunity are governed by the balancing test of *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). Subsequent cases, including primarilly *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), have explained that

> [T]he hearing need not be a full adversarial hearing but must afford the employee a meaningful opportunity to speak in her own defense. . . . The tenured public employee is entitled to written or oral notice of the charges against him, and explanation of the employer's evidence, and an opportunity to present his side of the story.

*See also Matthews v. Harney County School District*, 819 F.2d 889, 892 (9th Cir. 1987).

In this case, it is clear that Evans was presented with this sort of notice and opportunity to be heard. She and her counsel were invited at least twice prior to the publication of the Auditor's report to review and comment upon drafts provided to them, and to present any and all evidence and argument they thought might be "persuasive" in response.

At the time it was published, the report was not "in connection with" any adverse employment decision or action. By the time the required termination action was even arguably taken, months later,

---

[3] Given the standard on summary judgment, the court will assume that the information was stigmatizing and that the report was "published." It is worth noting, however, that these aspects of the plaintiff's claim are largely glossed over in her materials.

Evans and her counsel had been given at least three additional opportunities to address the charges and the evidence (which had been provided to them), and in fact had participated in a hearing that the parties both called a "name clearing hearing," "analogous to a *Loudermill* hearing." Her lawyer was involved at all stages, and corresponded extensively with Ms. Evans' employer and its counsel regarding the content and contours of the hearing he demanded and his client received.

On these facts, the court cannot find conclude that Evans was denied any opportunity to address the contents of the Auditor's Report prior to the time it was published "in connection with her termination." Absent such a conclusion, the publication is not actionable on due process grounds as a matter of law. The Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's §1983 claims are dismissed with prejudice.

DATED this 16th day of March, 2007.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE